```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                                  25 MJ 1713(JCM)
 5      -vs-
                            INITIAL APPEARANCE/BAIL HEARING
 6  THOMAS JAMES PUCCINI,

 7                          Defendant.

 8  ------------------------------------x

 9                            United States Courthouse
                              White Plains, New York
10
                              May 21, 2025
11

12  Before:  THE HONORABLE JUDITH C. McCARTHY,
                    United States Magistrate Judge
13

14  A P P E A R A N C E S :

15  JAY CLAYTON
          Acting United States Attorney for the
16        Southern District of New York
    MARCIA S. COHEN
17        Assistant United States Attorney

18  FEDERAL DEFENDERS OF NEW YORK
    JANE V. WHITE
19        Attorney for Defendant

20  ALSO PRESENT:

21  Pretrial Services Officer Andrew Abbott
    Task Force Officer Thomas Woodburn
22

23

24

25  **Transcribed from digitally recorded proceedings**
```

OFFICIAL COURT REPORTER
DARBY GINSBERG, RPR, RCR (914) 390-4102

1            THE DEPUTY CLERK:  In the matter of the United States

2   of America versus Thomas James Puccini.

3            Counsel, please state your appearances for the record.

4            MS. COHEN:  Marcia Cohen for the government, and with

5   me at counsel table is Task Force Officer Thomas Woodburn.

6            THE COURT:  Good afternoon, Ms. Cohen.

7            MS. COHEN:  Good afternoon.

8            THE COURT:  Good afternoon, Mr. Woodburn.

9            OFFICER WOODBURN:  Good afternoon.

10           MS. WHITE:  Good afternoon, Your Honor.  Jane White

11  with the Federal Defenders and Thomas Puccini seated beside me.

12           THE COURT:  Good afternoon, Ms. White.  It's been a

13  while since I've seen you, and I hope you are well.

14           MS. WHITE:  Thank you.

15           THE COURT:  And good afternoon, Mr. Puccini.

16           THE DEFENDANT:  Good afternoon, Your Honor.

17           THE COURT:  Okay.  Ms. Cohen, what are we here for?

18           MS. COHEN:  We are here for the initial presentment of

19  the defendant.  He was arrested at about 6:30 this morning

20  outside his home in Westchester, New York.

21           THE COURT:  Okay.  Okay.  Mr. Puccini, if you could

22  please stand?

23           THE DEFENDANT:  Yes.

24           THE COURT:  I want to advise you that this is not a

25  trial.  This proceeding is called an initial appearance.  The

1  purpose of today's proceeding is to advise you of your rights,

2  inform you of the charges against you, and determine whether

3  bail should be set that may allow you to be released, and if so,

4  what that bail should be.  You have the right to remain silent

5  at this and every stage of the proceeding.  Any statement that

6  you make may be used against you.  You have the right to remain

7  silent even if you've already spoken to law enforcement

8  officers, and you are not required to answer any questions that

9  law enforcement officers ask you from this moment on.  Because

10 of that, I suggest you consult with your attorney before you

11 answer any questions, including questions that I may ask you at

12 this proceeding.  Do you understand?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Ms. Hummel, could you please place

15 Mr. Puccini under oath or affirmation?

16         (Defendant sworn)

17         THE COURT:  So you are under oath now.  It's important

18 for you to understand that if you knowingly make a false

19 statement during these proceedings, you could be subject to

20 prosecution for perjury or for making a false statement to the

21 Court, and you could face a punishment up to five years in

22 prison, and a $250,000 fine if convicted of those offenses.

23 This punishment would be separate and apart from any sentence

24 you may be facing on the crime charged in the complaint.  Do you

25 understand?

052125                    Initial Appearance - Bail Hearing

1              THE DEFENDANT:  I do.

2              THE COURT:  It's also important for you to understand

3     that any false statement you may make during this proceeding, as

4     well as any false statement you may have made to pretrial

5     services, may be used against you at trial if you decide to

6     testify at trial.  Do you understand?

7              THE DEFENDANT:  I do.

8              THE COURT:  What is your full name?

9              THE DEFENDANT:  Thomas James Puccini.

10             THE COURT:  How old are you?

11             THE DEFENDANT:  I am 28 years old.

12             THE COURT:  Do you have any difficulty reading,

13    writing, speaking or understanding English?

14             THE DEFENDANT:  I do not.

15             THE COURT:  How far did you go in school?

16             THE DEFENDANT:  I have one master's degree, and I was

17    almost completing a second.

18             THE COURT:  And what was it in?

19             THE DEFENDANT:  The first master's degree is in autism

20    spectrum disorder.  That's a Master's of Arts, I believe.  And a

21    the second master's degree was a Master of School Building

22    Leader -- School Leadership, which would have granted me

23    district-level administration, as well as school building level

24    administration, but I had -- I stopped after three semesters,

25    but I do have the first master's completed.

1          THE COURT:  And have you ever been hospitalized or

2    treated for narcotic or alcohol addiction?

3          THE DEFENDANT:  I have not.

4          THE COURT:  And have you taken or used any mind-

5    altering drugs, medicines or pills or consumed any alcohol in

6    the last 24 hours?

7          THE DEFENDANT:  I have not.

8          THE COURT:  Is your mind clear today?

9          THE DEFENDANT:  It is.

10          THE COURT:  Do you understand what's happening at this

11    proceeding?

12          THE DEFENDANT:  I do.

13          THE COURT:  If you've made any statements to pretrial

14    services that you would like to have corrected or added to in

15    any way, you should discuss that with your attorney so the

16    record can be corrected.  Do you understand that?

17          THE DEFENDANT:  I do.

18          THE COURT:  Ms. White, any corrections or additions to

19    be made to Mr. Puccini's pretrial services report?

20          MS. WHITE:  There is one correction, which is on

21    page 3 in the first paragraph.  The second sentence says,

22    "However, he indicated he remotely teaches students," and that

23    is not correct.  He is only working on lesson plans.  In his

24    current role he is not teaching remotely; he prepares lesson

25    plans that other teachers use.  And that is the only correction.

052125                    Initial Appearance - Bail Hearing

1            THE COURT:  Mr. Abbott, you made that notation?

2            OFFICER ABBOTT:  Yes, Your Honor.

3            THE COURT:  Thank you.

4            Okay.  Mr. Puccini, you have the right to be

5   represented by an attorney during all court proceedings,

6   including this one, and during all questioning by the

7   authorities.  You also have a right to consult with your

8   attorney prior to answering any questions.  Do you understand

9   that?

10           THE DEFENDANT:  I do.

11           THE COURT:  You have the right to retain an attorney

12  of your own choosing.  However, if you cannot afford an

13  attorney, I will appoint one today to represent you without cost

14  to you.  Do you -- do you have the money to hire your own

15  attorney?

16           THE DEFENDANT:  No.

17           THE COURT:  Do you want me to appoint an attorney to

18  represent you?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Ms. White, has an affidavit of financial

21  condition been completed?

22           MS. WHITE:  It has with the exception of one thing

23  that I just noticed, so one second.

24           THE COURT:  Okay.

25           (Pause)

052125                 Initial Appearance - Bail Hearing

1              MS. WHITE:  Okay.  An affidavit is completed.

2              THE COURT:  Thank you.  Ms. Hummel, could you please

3  verify the financial affidavit with the defendant?

4              THE DEPUTY CLERK:  Mr. Puccini, I show you this

5  financial affidavit, which is signed and dated today, May 21st,

6  2025; is that your signature?

7              THE DEFENDANT:  Yes.

8              THE DEPUTY CLERK:  Before signing this affidavit, did

9  you have a chance to read it and review it with your attorney?

10             THE DEFENDANT:  I did.

11             THE DEPUTY CLERK:  Would you raise your right hand?

12 Do you swear that it is true and accurate?

13             THE DEFENDANT:  I do.

14             THE DEPUTY CLERK:  Thank you.

15             THE COURT:  Thank you, Ms. Hummel.

16             THE DEPUTY CLERK:  You're welcome.

17             THE COURT:  Okay.  If anything changes, Mr. Puccini,

18 while the case is ongoing, you are required to notify the Court

19 of that change.  Okay?

20             THE DEFENDANT:  Yes, Your Honor.  Thank you.

21             THE COURT:  Based on the statements you made on this

22 form, I find that you are financially unable to obtain counsel.

23 I appoint Jane White to represent you.

24             Thank you, Ms. White, for taking the appointment.

25             MS. WHITE:  Thank you, Your Honor.

1            THE COURT:  So, Mr. Puccini, if you are not a U.S.

2    citizen, you may request that a government attorney or a law

3    enforcement official notify a consular officer from your country

4    that you have been arrested.  Even without a request,

5    notification may be required by an international agreement.  Are

6    you a United States citizen?

7            THE DEFENDANT:  Yes, I am, Your Honor.

8            THE COURT:  Are you a citizen of any other country?

9            THE DEFENDANT:  No, I am not, Your Honor.

10            THE COURT:  So I have before me the complaint

11    containing the charges against you in this case.  This is a

12    four-count complaint.  Count One, Count Two, and Count Three

13    charges you with sexual exploitation of a child in violation of

14    Title 18 United States Code Section 2251(a) and (e).  Each of

15    those counts has a separate victim.  Count Four charges you with

16    receipt and distribution of child pornography in violation of

17    Title 18 United States Code Sections 2252A(a)(2)(B) and (b)(1).

18            Have you had an opportunity to review the allegations

19    in this complaint with Ms. White prior to appearing before me

20    today?

21            THE DEFENDANT:  Yes, I have, Your Honor.

22            THE COURT:  Do you understand what you are being

23    charged with?

24            THE DEFENDANT:  Yes, I do, Your Honor.

25            THE COURT:  Ms. White, have you seen a copy of the

1    complaint?

2             MS. WHITE:  Yes, Your Honor.

3             THE COURT:  Have you had an opportunity to review it

4    with Mr. Puccini?

5             MS. WHITE:  Yes, I have.

6             THE COURT:  Are you satisfied that he understands the

7    charges?

8             MS. WHITE:  Yes, I am.

9             THE COURT:  Do you waive the public reading?

10            MS. WHITE:  Yes.

11            THE COURT:  Okay.  You may be seated, Mr. Puccini.

12            THE DEFENDANT:  Thank you, Your Honor.

13            THE COURT:  On the issue of bail, what's the

14   government's position?

15            MS. COHEN:  Your Honor, the government seeks detention

16   on grounds of danger to the community, as well as risk of

17   flight.

18            THE COURT:  And, Ms. White, do you want to be heard on

19   that today?

20            MS. WHITE:  Yes.

21            THE COURT:  Okay.  So I'm going to ask Ms. Cohen to

22   present her arguments to the Court.

23            MS. COHEN:  Yes, Your Honor.

24            As I said, we seek detention on grounds of danger to

25   the community, as well as risk of flight.  As an initial matter,

052125                    Initial Appearance - Bail Hearing

1  this is a presumption case pursuant to Title 18 United States

2  Code Section 3142(e)(3)(E).  That means that there is a

3  presumption here that no condition or combination of conditions

4  will reasonably assure the appearance of the defendant or the

5  safety of the community.

6          The presumption applies here because the defendant is

7  charged with offenses that are listed in 3142(e)(3)(E).

8  Specifically, he is charged with sexual exploitation of a child

9  and receipt and distribution of child pornography.

10         First, with respect to danger:  The charges in the

11  complaint involve four different teenage victims, one who was

12  13, and they span the course of six and a half years from

13  January 2017 through June of 2023, and the evidence of his

14  criminal conduct with respect to those victims is overwhelming.

15         Victim-1 was a 17-year-old high school student, and

16  the defendant was one of his football coaches.  The defendant

17  knew that Victim-1 lived outside the school district, and he

18  used this information to essentially blackmail Victim-1 into

19  sending him sexually explicit images and videos.  He used a

20  Snapchat account with the name "Alex_fundi2" and initially

21  pretended to be a girl.  This purported girl sent Victim-1 nude

22  photos of a girl and asked Victim-1 for explicit photos.

23  Victim-1 sent them to her.  Soon after that, Victim-1 blocked

24  Alex_fundi.

25         What happened next was that Puccini reached out to

1  Victim-1 using his own Snapchat, and when I say "his own

2  Snapchat," I mean the Snapchat that was known to be his Snapchat

3  account by Victim-1, and that was "Tommytuts" account.  Puccini

4  reminded Victim-1 that he knew Victim-1's secret.  He also sent

5  Victim-1 a screen shot of Victim-1's burner Snapchat account,

6  and that burner Snapchat account is the one that Victim-1 was

7  using with Alex_fundi, and Victim-1 knew at that point that

8  something was going on because he knew that there was no way

9  that his coach would otherwise know about his burner Snapchat

10 account.

11         And then Victim-1 got messages on Cash App saying, "I

12 know your secret" and also saying, "I have your pics and videos

13 and you better unblock Alex_fundi," and so Victim-1 unblocked

14 Alex_fundi and began sending sexually explicit photos and

15 videos.

16         Victim-2 was 13 years old when Puccini's criminal

17 conduct with respect --

18         THE COURT:  Before you go on --

19         MS. COHEN:  Yes.

20         THE COURT:  -- remind me, Victim-1 was how old at the

21 time?

22         MS. COHEN:  Victim-1 was 17.

23         THE COURT:  Thank you.  Go on.

24         MS. COHEN:  Victim-2 was 13, and the criminal -- at

25 the time that the conduct began.  The defendant met Victim-2

1   when Victim-2 was in middle school in eighth grade.  Victim-2

2   and the other middle school football players worked out at the

3   high school gym to prepare themselves for junior varsity

4   football, and the defendant supervised them in the weight room.

5   Puccini began Snapchatting with Victim-2 from that Tommytux

6   account, and by January of Victim-2's eighth grade year, the

7   defendant had convinced Victim-2 to send him sexually explicit

8   images and also to participate in races; races to see who could

9   masturbate to ejaculation first, and the winner had to send a

10  photo or a video of the finish.  And as I said, that began when

11  Victim-2 was in his eighth grade year and still 13.

12          But the defendant's criminal conduct continued for

13  several years, and it was only after Victim-2 completed his

14  tenth grade year -- that was in 2019, and Victim-2 was 15 years

15  old -- that Victim-2 began refusing to send the defendant the

16  images that he wanted.  By then, the defendant had already

17  received hundreds of videos and images of Victim-2.

18          And the defendant's conduct with Victim-2 was not only

19  online.  In September of 2017, when Victim-2 had just started

20  ninth grade, he had just turned 14 years old, the defendant

21  brought Victim-2 to his house.  The defendant's bedroom was in

22  the basement of his family house.  The defendant got him on his

23  bed and began making moves toward him, pressuring him, asking

24  him repeatedly to take out his penis and show it to him.  The

25  defendant essentially was complimenting him on how big his penis

1  was for a 14-year-old, and the defendant had seen his penis

2  because of all the explicit images that the victim had sent him

3  by that point.

4          The defendant told -- when Victim-2 declined and said,

5  "I don't want to do this," the defendant told Victim-2 that he

6  was going to go upstairs to say goodnight to his parents and to

7  get some water and snacks, and while he was doing that, Victim-2

8  took the opportunity to run out of the house.

9          Moving on to Victim-3 and Victim-4, the conduct with

10 respect to those victims occurred in 2023.  The defendant got

11 both of those victims to send him sexually explicit images with

12 the promise of paying for them.  Victim-3 was in Alabama.  He

13 was 16.  Victim-4 was 18 and in Massachusetts.  And with respect

14 to Victim-4, the defendant specified that he wanted sexually

15 explicit images of Victim-4 from when Victim-4 was 15 or 16, and

16 Victim-4 sent him the images that he requested.

17         Now, it's important to recognize that these four

18 victims are not the only victims here.  We know based on this

19 investigation -- and as I think is obvious from the complaint --

20 that there are more.  We are still in the process of identifying

21 and talking to them.

22         The complaint lays out details of the defendant's

23 conduct with a 16-year-old boy in Illinois.  He is referred to

24 as Student-1 in the complaint.  That boy sent sexually explicit

25 images to Puccini in October of 2023.  We have the images he

1  sent from the search of the Alex_fundi Snapchat account.  And as

2  the complaint lays out, we also have the very disturbing

3  messages that the boy sent Puccini on Cash App, and reading

4  between the lines, it seems quite clear that after the boy sent

5  the images, he didn't hear back from Puccini, and he became

6  terrified about what was going on with his -- with his images.

7  So he sent Puccini a series of messages through Cash App saying,

8  "Please respond.  I am begging you to answer.  At least talk to

9  me.  You owe me at least that.  If you ever cared about me,

10  respond."  And showing how absolutely frantic that boy was he

11  even told Puccini, "A 17-year-old's suicide is on you."

12          We identified the boy.  Authorities made sure he was

13  okay.  And we also learned that although he had told Puccini

14  that he was 17, in fact, he was 16 in October of 2023, and we

15  are still in the process of learning more about that boy's

16  relationship with Puccini.

17          And then there are all the messages, thousands between

18  Puccini and two other boys that he coached.  They are Male-1 and

19  Male-2 in the complaint.  Both were football players, and the

20  defendant was their coach.  Some of the messages with Male-1 are

21  in the complaint.  Those messages show how Puccini relentlessly

22  pressured this boy to provide him with images of his penis.  His

23  efforts began when the boy was 15 and in ninth grade, and they

24  continued for years.

25          In 2016, when Puccini begged for photos, Puccini told

1   him, "I know this is wrong for me to ask you, and I can't

2   control this."  And another time in 2017, Puccini told him, "I'm

3   not asking to fucking suck you off or something.  Lit" --

4   literally -- "two Snapchats of your dick that will disappear

5   after ten seconds."  And he added, "I practically see it soft

6   every day because of your bulge."  And then he continued, "Have

7   I ever done anything to hurt you?  No, I haven't.  I think

8   you're making it into a bigger deal than it is."

9         Those are the words of a man who used his position as

10  a football coach to pressure kids into doing what he wanted.

11  That boy, Male-2, and also Male-1, didn't send the photos.  But

12  they also didn't report him, and the defendant knew that they

13  wouldn't report him because he knew that football mattered to

14  them and that they didn't want to mess it up.

15         There are thousands of messages between Puccini and

16  Male-2, and in many of them, just like with Male-1, there are

17  lots and lots of references to the boy's penis and requests from

18  Puccini for images.

19         And from the Alex_fundi Snapchat records we also know

20  that Puccini's efforts to get those sexually explicit images

21  from that boy didn't stop even after the boy graduated from high

22  school.  In February of 2022, when Male-2 was in college,

23  Alex_fundi, who we know to be the defendant, reached out to

24  somebody else on Snapchat, and he asked that person to try to

25  add Male-2 and get pics and vids from him.  He gave that person

1  Male-2's Snapchat name, and he even sent him pictures, photos of

2  Male-2's face.

3          And there are certainly other clear indications that

4  there are many additional victims out there.  On November 1st,

5  2024, the state executed a search warrant and seized the

6  defendant's desktop computer.  That computer contained a backup

7  of the defendant's iCloud, and the backup contained some note

8  entries.  One of those notes was created in December 2018, and

9  it was last modified in September -- on September 22, 2024.  The

10 note is called "phone passcodes," and it is very clearly a list

11 of 19 boys' names with numbers after each name that seem to be

12 exactly what the heading of the note said they are, phone

13 passcodes.  The note -- the boys on that list are former or

14 current students, and in addition to what appear to be passcodes

15 for those 19 boys that are listed, there are two more entries

16 that appear to be Snapchat passwords.  One has the boy's first

17 name, and then the word "snap" with a colon, and then what looks

18 like a Snapchat password, and that boy's passcode, presumably

19 his phone passcode, is also on that list.

20         And I want to add that very, very troublingly, the

21 last name on the list is the name of a boy who is currently in

22 tenth grade at the school and is the brother of Male-2, and we

23 know from the search of the defendant's phone, the phone -- his

24 phone that was seized when the state did the search warrant in

25 November of 2024, that there are thousands of messages between

1   Puccini and that boy who is currently a tenth grader; and I want

2   to be clear, those messages are not sexual, but they are

3   obviously disturbing, the fact that there are thousands of

4   messages between Puccini and the younger brother of the kid that

5   he tried for years to get sexually explicit images from.

6          The passcode list and the fact that it was modified in

7   September of 2024 is another piece of evidence that tells us

8   that he was preying on boys in his community and that his

9   conduct was continuing into the fall of 2024 when he was

10  arrested in the state.

11         Look, the bottom line here is that in terms of danger,

12  everything that we have learned in this investigation makes it

13  clear that there is a real risk of danger here.  He was a

14  football coach, and he seems to have been very well-liked and

15  entrenched in the community.  He grew up there.  He graduated

16  from that school in 2014, and he played football there.  And

17  after he graduated from high school, he worked his way up from

18  being a volunteer football coach to being a paid assistant

19  football coach; and then he became assistant athletic director,

20  and then he became the interim athletic director in 2024.  He

21  had so much to lose, and he engaged in this criminal conduct

22  anyway, and that speaks volumes about the intensity of his

23  sexual interest and his inability to restrain himself.

24     His words to Male-1:  "I know this is wrong for me to ask

25  you, and I can't control this."

1              And we also know that in 2017, when he took that then-
2    13-year-old Victim-2, who was a freshman football player back to
3    his house, he had been thinking about doing it for a while.  In
4    January of 2017, when Victim-2 was still in eighth grade,
5    Puccini had asked him -- he was 13 years old -- "Is it possible
6    for you to sneak out ever?"  And when Victim-2 told him that the
7    doors of his house beep when you leave, so that to sneak out he
8    has -- he would have to actually go through a window, Puccini
9    asked him, "Would you ever?"

10             And it also bears adding that he took 14-year-old
11   Victim-2 back to his house to his bedroom with his parents
12   upstairs, which is just another indication that he could not
13   control himself.

14             The defendant was arrested in November 2024, and he
15   was charged in the state, and he was released without
16   conditions.  Has he made efforts to contact boys in the
17   neighborhood or boys online?  Has he set up new Snapchat
18   accounts using a new phone number and different identifying
19   information?  We don't know.  But what we do know is that on a
20   few different days in November 2024, after he was arrested, he
21   logged into his Tommytuts Snapchat account.  Now, there was
22   nothing prohibiting him from doing so.  The dates he logged in
23   were the 7th of November, the 12th, 18th, 19th and 25th, and we
24   know that after those logins, he hasn't logged into that account
25   again.

1            And we also know that the logins for every one of

2    those logins after November 7th show that he logged in using a

3    VPN.  He had not used a VPN previously.  We know that because we

4    have the login records from Snapchat for that Alex_fundi account

5    and the Tommytuts account.

6            VPNs are used -- are generally used as a way to

7    encrypt your internet activity.  They hide your IP address, and

8    they are often used to mask your online identity so that

9    essentially what they do is they reroute your IP address.

10            I wanted to refer to risk of flight.  The sexual

11    exploitation charges here carry a mandatory minimum of 15 years.

12    The receipt and distribution charge carries a mandatory minimum

13    of five years.  The very strong evidence in this case, coupled

14    with that mandatory minimum of 15 years' imprisonment, creates a

15    tremendous incentive to flee.

16            For all of these reasons, the defendant should be

17    detained.  He is a danger to the community, and he is a flight

18    risk, and there is no combination of conditions that will

19    reasonably assure that he will not commit additional crimes

20    while he is out on bail or that he will appear in court as he is

21    directed.

22            THE COURT:  Thank you, Ms. Cohen.

23            Ms. White?

24            MS. WHITE:  Thank you, Your Honor.

25            Your Honor, Thomas Puccini has been a resident of

1  Eastchester for his entire life.  He stands before Your Honor

2  28 years old with absolutely no criminal conviction record.  He

3  lives with his family:  His mother, his father, who is here

4  today in the audience -- Paul, who is a retired police officer

5  who served on the Mount Vernon police force for over ten

6  years -- his sister, and his grandparents.  This family has been

7  part of the community for a very long time.

8          Mr. Puccini is not a risk of flight.  He's only ever

9  traveled with his family for family vacations.  He is not the

10 kind of person who could or would flee from the case and go

11 start up a new life somewhere else.  His life is here.  He has a

12 state case pending in Eastchester.  He was arrested in November

13 last year; released on his own recognizance, he's made every

14 appearance.  He has a perfect appearance record on that case.

15         The government may argue, well, he wasn't facing as

16 much time there as he is facing now, but he always knew that he

17 was facing a felony in state court, and he still showed up every

18 single time.  And I've spoken with his attorney on that case,

19 and I understand that each time the state case has been on for

20 trial, the district attorney there has answered "not ready for

21 trial" and disclosed that their investigation was ongoing.  So

22 Mr. Puccini has known for months that the investigation was

23 ongoing, and he has not fled.

24         He's had six months since that arrest to try to flee,

25 and he didn't do anything close to that.  That's demonstrative

1  proof that he does return to court.  So, Your Honor, we are

2  asking that you grant him release on the conditions recommended

3  by pretrial, which are very strict conditions, including home

4  detention and GPS monitoring.

5          In addition to that, his family is willing to post

6  their house that they own that is worth quite a bit of money.

7  They are willing to post that house.

8          And, Your Honor, just going through the 3142 factors,

9  Mr. Puccini has been placed on leave.  He is not working with

10 students any longer.  He is a college graduate.  He holds a

11 master's.  He's been employed consistently throughout his adult

12 life.  He does not have a substance abuse problem.  He is

13 willing to seek therapy and mental health treatment.  His family

14 is more than willing to be cosigners, and as I said, to put up a

15 very substantial package for bond, their house.  So we are

16 asking Your Honor to grant him release with conditions.

17         And one more thing that I will mention, just from

18 talking to Mr. Puccini and his family, he lives with his

19 grandmother.  His grandmother raised him, and she currently has

20 Stage 4 cancer, and so he and his family are very worried about

21 what impact it would have on her and on them for him to be

22 detained pretrial in this case.

23         So lastly, Your Honor, the Bail Reform Act of course

24 requires that Your Honor impose the least restrictive set of

25 conditions reasonably necessary to secure Mr. Puccini's

1    appearance and the safety of the community, and the conditions

2    that pretrial has recommended, along with the collateral of the

3    house, are conditions that reasonably can -- you know, that can

4    assure his appearance in court, the least restrictive set of

5    conditions that can secure his appearance in court, and those

6    conditions are conditions that would secure his appearance in

7    court, and his record of appearance in state court is one piece

8    of, you know, a demonstration of his record of coming back to

9    court.

10          THE COURT:  What would be the amount of the bond?

11          MS. WHITE:  One moment.  You are saying in addition to

12   the house or just --

13          THE COURT:  No.  Because if he -- you said on the

14   terms that pretrial has put in.  They put an unsecured bond

15   cosigned by two financially responsible people.  You are willing

16   to do a secured bond secured by the house, but I would need to

17   know the size of the bond that you are recommending.

18          MS. WHITE:  The house is worth almost a million

19   dollars, so that is the amount of the house.

20          THE COURT:  Is there a mortgage on the house?

21          MS. WHITE:  There is.  It is almost all paid off other

22   than about $200,000 is left to be paid off.

23          THE COURT:  Okay.  Anything else, Ms. White?

24          MS. WHITE:  No, Your Honor.

25          THE COURT:  Thank you.

1          Ms. Cohen, do you want to respond to anything?

2          MS. COHEN:  Just briefly.  I do want to say that the

3    state case charged extortion, not a sex crime; involved only

4    Victim-1 because at that point that was the state's only

5    chargeable victim.  The fact that the defendant knew that the

6    state was continuing to investigate I don't think changes

7    anything here.  Federal charges are different.  The penalties

8    here are completely different than he faced in the state.  I

9    think -- I'm not positive, but my recollection is that that

10   state extortion charge carried a maximum of four years -- three.

11   I'm sorry, three years.

12          Look, I do not think that we heard a lot about how --

13   about danger here and how the community would be protected from

14   the defendant if he was out.

15          I also want to say that if he was released -- and we

16   strongly believe that he should not be released -- but if he was

17   released, we have real concerns about -- about him living with

18   his father because his father seems, frankly, so angry about the

19   case.  This morning when the investigators were there, he

20   essentially cursed at them, called them "scumbags, scumbag rat."

21   And look, it was at 6:00 a.m., and obviously he was very upset,

22   but later he saw the TFO, the task force officer who is sitting

23   here at the table, in the courthouse, and he cursed at him

24   again.  He expressed his anger that his son was not permitted to

25   surrender, and he told the task force officer, "I will remember

1  this."

2          And so, look, release to a family where the family is,

3  you know, a functioning family with computers and phones really

4  only works if every single person in that household is committed

5  to making sure that the defendant is not going to violate the

6  conditions.  Here, I think that is concerning.

7          But even more so, look, I just don't think that the

8  conditions of release -- that any conditions of release can

9  assure us that he is not going to harm a child.

10          THE COURT:  Thank you.

11          Ms. White, do you want to respond to anything before I

12  take a quick break?

13          MS. WHITE:  No, Your Honor.  Thank you.

14          THE COURT:  Mr. Abbott, do you want to join me in my

15  chambers?

16          (Recess)

17          THE COURT:  Mr. Puccini, can you please stand?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  So this, as Ms. Cohen said, is a

20  presumption case.  What that means is that there is a

21  presumption that there's no combination of conditions that I can

22  put into place that can reasonably assure your appearances at

23  court or can assure the safety of the community.  That is what

24  we call a rebuttable presumption, which means that Ms. White can

25  rebut it, but it doesn't go away.  It's part of a factor that I

1  have to consider.  So the factor -- one of the factors I am

2  considering is that this law believes that the passage of

3  this -- the people who passed this law believe that there is no

4  combination of conditions that can be put into place to ensure

5  the safety of the community.  That stays with my analysis the

6  entire time.

7          So what I have to evaluate is, is there any

8  combination of conditions that I can put into place that's going

9  to ensure the safety of the community and ensure your

10  appearance?

11          When making these decisions, I have to consider the

12  following factors:  One, the nature and circumstances of the

13  offense charged.  I have to consider whether it's a crime that

14  involves a minor victim, and here it does.  The nature and

15  circumstances of the offenses that you are being charged with

16  weigh heavily against you.  There are in this complaint four

17  victims, and clearly more.  So that weighs very heavily against

18  you; the type of crime it is, the amount of communications you

19  had, the grooming and manipulation that appears from your

20  behavior and the way you communicated with them in the

21  complaint, that's significant and weighs heavily against you

22  being released.

23          The weight of the evidence against you is also another

24  factor that needs to be considered.  Some courts have said that

25  it's not the most important factor, but it appears that the

1  weight of the evidence against you is strong.

2          Your history and characteristics, including your

3  character and mental health, your family and community ties,

4  your employment history, your financial resources, your criminal

5  history, whether you have history of drug or alcohol abuse or

6  any problematic history concerning appearances at court, it

7  appears that this all weighs in your favor.  You have strong

8  family and community ties.  You have strong employment history.

9  You at a young age have been given a lot of responsibility and

10 very good jobs.  You have no real criminal history because the

11 arrest in the state court is really related to these offenses,

12 so there's no convictions to look at.  You apparently have no

13 history of drug or alcohol abuse, and you've been appearing in

14 court in state court.  So those all weigh in your favor.

15          The last factor I have to consider is the nature and

16 seriousness of the danger to any person or the community that

17 would be posed by your release.  I don't find the position I am

18 in and the decision I have to make to be easy.  You are a young

19 man who has done well in your short life through both getting

20 educated and working and no criminal record, and those are all

21 things that make this decision both favorable to you and very

22 difficult for the Court because in evaluating this decision, in

23 deciding what I have to do and what is the right thing to do, I

24 have to consider the nature of the crime that you have been

25 charged with and the risk to the community if I release you.

052125                    Initial Appearance - Bail Hearing

```
 1            We are looking at a crime which has spanned, if I've
 2   got the dates right, from at least January of 2017 to, you know,
 3   June of 2023 and perhaps later.  We have four different victims
 4   here.  We have Victim-1 who you were this individual's football
 5   coach.  You held a position of respect.  You held a position of
 6   power.  You used your role, you used your closeness to this
 7   victim to be able to blackmail this person, according to the
 8   allegations in this complaint, to send sexually explicit videos.
 9            Victim-2 was a 13-year-old.  You met him when he was
10   in middle school trying to impress the football coach, working
11   out regularly, hoping that when he got to high school he makes
12   the team.  Again, you held a position of power, and you abused
13   that, it appears, as it relates to Victim-2.
14            Then we have Victim-3 in Alabama and Victim-4 in
15   Massachusetts, which means that the allegations don't just go
16   around those that you had easy access to.  It was very hard to
17   hear about a young person begging you to respond, being
18   terrified of what you might do.  The pressure and control and
19   influence you've had on these victims you would take -- appears
20   to have taken advantage of them, and so now I have to understand
21   and decide whether someone who has been accused of committing
22   these such crimes where the evidence seems strong, whether there
23   is any combination of conditions I can put into place.  And
24   under the Adam Walsh Act, there are very strict conditions that
25   have to be put into place, and there is very strict computer-
```

1  monitoring conditions to have to be put into place.  But when

2  someone lives in a home with a lot of people with laptops and

3  internet and iPads and cellphones in this day and age, it is

4  much harder to ensure that there will be no access to the

5  internet.

6          It gives me great concern and great pause to hear the

7  government say that there's been communications after your

8  arrest that were done, not necessarily communications, but mail

9  and email sent using a VPN doesn't appear that that was the

10  practice beforehand, which gives me concern that you will look

11  for a way to continue this because -- in your own words in one

12  of these texts -- that you couldn't help yourself.

13          Given the nature of this crime, given the behavior

14  you've demonstrated through the allegations in this complaint

15  and the proffer of the government, I do not believe there is a

16  combination of conditions that I can put into effect that's

17  going to ensure the safety of the community.

18          On risk of flight, the Court -- it's a lower standard,

19  and the Court has said that simply the seriousness of the crime

20  alone is enough to find risk of flight, and I could see a family

21  wanting to help someone to avoid that kind of future, but I

22  think given your community ties and given your family ties, I

23  don't believe the government's met its burden on risk of flight,

24  but they have met its burden on danger to the community.

25          So I am going to deny your application for bail and

052125                    Initial Appearance - Bail Hearing

1  remand you at the end of this proceeding to the custody of the

2  U.S. marshals.

3          Since you've been arrested on a complaint, I have to

4  advise you of your rights to a preliminary hearing.  You have a

5  right to a preliminary hearing at which the government will have

6  the burden of establishing that there is probable cause to

7  believe that the crime for which you are being charged has been

8  committed and that you are the person who committed it.  If you

9  are in custody, you have the right to that preliminary hearing

10  within 14 days.  If you are not in custody, you have the right

11  to have that preliminary hearing within 21 days.  A preliminary

12  hearing will not, however, be held if before the date it is

13  scheduled you are indicted by a grand jury or an information is

14  filed against you by the government.

15          In addition, you have a right to waive a preliminary

16  hearing or to consent to an extension of time for that hearing,

17  and by doing so you do not give up any defenses or any other

18  rights you may have.  However, you should not waive or consent

19  to an adjournment until you've had an opportunity to discuss the

20  matter with your attorney.  Do you understand that?

21          THE DEFENDANT:  Yes, I do, Your Honor.

22          THE COURT:  Ms. White, have the parties agreed to a

23  date for the preliminary hearing?

24          MS. WHITE:  We have not yet.  We would agree to a

25  longer date for that because of submissions that we will be

1  making, so we would ask for a 90-day -- or we will just waive

2  until the 30th day.

3            THE COURT:  You will waive until the 30th day, and if

4  you need additional times after that, you can file the

5  appropriate paperwork with the government.

6            Ms. Hummel, what is the 30th day here?

7            THE DEPUTY CLERK:  June 18, 2025.

8            THE COURT:  Okay.  Mr. Puccini, you may be seated.

9            Is there anything else we need to do here today?

10           MS. COHEN:  Nothing from the government, thank you.

11           MS. WHITE:  No.

12           THE COURT:  Mr. Puccini, I do wish you good luck.

13           And, counsel, have a good evening.  Thank you,

14  Mr. Abbott.

15                             -o0o-

16

17

18

19

20

21           Certified to be a true and accurate transcript of the

22  digital electronic recording to the best of my ability.

23           /s/ Darby Ginsberg

24           U.S. District Court
             Official Court Reporter

25